**IN THE UNITED STATES DISTRICT COURT<br>FOR THE NORTHERN DISTRICT OF ILLINOIS<br>EASTERN DIVISION**

| | |
|---|---|
| TRACEY O'NEIL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BLOOMIN' BRANDS INC; OS RESTAURANT SERVICES, LLC; and OUTBACK STEAKHOUSE OF FLORIDA, LLC,<br><br>Defendants. | Case No. 1:22-cv-04851<br><br>**Judge Sara L. Ellis**<br><br>Magistrate Judge Heather K. McShain |

**JOINT MOTION FOR APPROVAL OF SETTLEMENT**

NOW COME Plaintiffs, Tracey O'Neil, Stacy Ott Carroll, and Bianca Viamontes, by and through their attorneys, Caffarelli and Associates Ltd., and Defendants, Bloomin' Brands Inc; OS Restaurant Services, LLC; and Outback Steakhouse of Florida LLC, by and through their attorneys, Ogletree, Deakins, Nash, Smoak & Stewart, PC, and hereby file this Joint Motion for Approval of Settlement. The parties state the following in support:

**I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND.**

On September 8, 2022, Plaintiff O'Neil filed a putative class and collective action complaint, individually and on behalf of others similarly situated, alleging violations of the Equal Pay Act of 1963, as amended 29 U.S.C. §206(d) ("EPA") and the Illinois Equal Pay Act, 802 ILCS §112/1 *et seq.* ("IEPA"). Dkt. 1. Tracey O'Neil worked for Defendants as a Manager and, subsequently, as a Managing Partner from August 2019 through her termination in June 2022. Id. Ms. O'Neil alleged that she was privy to or otherwise learned the salaries of certain other Outback employees, including Managers and Managing Partners. She alleged that two male Managing Partners performing the same work as she were paid more for doing the same job.

Three female former managers and managing partners opted-in to this matter. First, Stacey Ott Carroll filed her consent on March 31, 2023. Dkt. No. 40, 40-1. Ms. Carroll worked at a Bonefish Grill in Orland Park, Illinois and served as a Manager there from approximately August 2016 until her termination in March 2023. Dkt. No. 46-1, Ex. O; *See also* Dkt. No. 61-1. Next, Andrea Proxmire opted in on April 13, 2023. Dkt. No. 43, 43-1. Ms. Proxmire worked for Bonefish Grill in Troy, Michigan, however she temporarily filled in as the Managing Partner at the Schaumburg, Illinois location for approximately one month in 2022.[1] Dkt. No. 46-1, Ex. R. Finally, Bianca Viamontes filed her consent to join this case on July 13, 2023. Dkt. No. 57, 51-1.[2] Ms. Viamontes worked at multiple Bonefish Grill locations in Illinois as a Manager and, subsequently, as a Managing Partner.

Bloomin' Brands, Inc. ("BBI") is a restaurant holding company that owns and operates several restaurant brands throughout the United States, including Outback Steakhouse, Carrabba's Italian Grill, Bonefish Grill, and Fleming's Steakhouse & Wine Bar. Dkt. 15 ¶ 9. Outback Steakhouse of Florida, LLC ("Outback"), is a wholly owned subsidiary five subsidiaries below of BBI. Dkt. 15 ¶ 10; dkt. 66 at 2. OS Restaurant Services, LLC ("OSRS") is a wholly owned subsidiary of Outback. Dkt. 15 ¶ 11. Plaintiff O'Neil alleged that all three Defendants were joint employers. Defendants denied that allegation, asserting that BBI and OSF employ no restaurant staff whatsoever and that only OSRS employed O'Neil and the other Plaintiffs.

Defendants denied violating the EPA or IEPA. Defendant OSRS states that base compensation decisions at Outback Steakhouse and Bonefish Grill are made by regional Joint

---

[1] On March 6, 2024 Andrea Proxmire was dismissed from this matter for her lack of responsiveness and participation. Dkt. No. 107.

[2] Ms. Viamontes opted-in to the case after Plaintiff submitted the Certification Motion. Because of this timing, a declaration was never collected from Ms. Viamontes.

Venture Partners. Dkt. 66 at 2-3. Defendant OSRS further asserts that different Outback Steakhouse and Bonefish Grill locations utilize two distinct compensation plans, with varying structured levels of base salary and bonus compensation. Defendants assert that no gender pay disparity exists, and that differences in pay among specific managers and Managing Partners are based on a multitude of factors other than sex, including but not limited to the different bonus structures applicable at various restaurant locations, the restaurant's specific needs, and the individual employee's skills, experience, and growth potential.

The parties conducted both written and oral fact discovery. During that time, Plaintiffs O'Neil and Carroll and Defendants exchanged multiple rounds of written discovery and produced extensive documents. Defendants deposed Plaintiff O'Neil and Plaintiff Carroll. Plaintiff deposed three company witnesses. The parties also conducted their own statistical analyses of wage data to establish or refute the existence of the alleged pay disparity.

In June 2023, Plaintiff filed a Motion for Order Authorizing Notice to Similarly Situated Persons, pursuant to 29 U.S.C. § 216(b) ("Conditional Certification Motion"). Defendants opposed the Certification Motion on multiple grounds and briefing was completed on July 28, 2023. Dkt. 64, 70. While the Certification Motion was pending, and following nearly a year of discovery, the parties agreed to request a settlement conference. Despite this, the parties continued to dispute most aspects of the case. The parties engaged in several pre-conference discussions with Judge McShain and exchanged two rounds of mediation statements prior to attending the settlement conference. On December 19, 2023, the Court granted Plaintiff's Conditional Certification Motion to send notice of this case to putative opt-in Plaintiffs ; however, prior to this decision, the parties had already agreed to and begun settlement negotiations limited to Plaintiff O'Neil and the three Opt-in Plaintiffs. A settlement conference was held on January 8, 2024. Dkt. No. 93. The parties

were unable to reach an agreement at the conference, but agreed to consider Judge McShain's recommendation. Dkt. No. 93. Two days later, the parties accepted Judge McShain's settlement recommendation. Dkt. No. 94.

The Settlement Agreement was fully executed on March 12, 2024. Ex. A. Pursuant to the terms of the Agreement, Plaintiff will dismiss this lawsuit with prejudice and release any and all claims against Defendants. Opt-in Plaintiff Viamontes also agreed to provide a general release. Stacey Ott Carroll similarly agreed to generally release all claims except for her participation as an opt-in plaintiff in the settlement of a separate FLSA matter in Florida. In exchange for these promises, and other promises in the Agreement, Defendants will pay to each of the participating Plaintiffs an amount determined to be a fair compromise of the damages they allege to have suffered, along with a portion of incurred fees and costs. The parties hereby seek the Court's approval of the settlement they reached in this matter.

## II.     THE LEGAL STANDARD ON APPROVAL OF SETTLEMENTS.

Under the FLSA, an employee may settle his claims against his employer if the parties agree on the terms, and the court approves the settlement as a fair and reasonable resolution. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Lewis v. Giordano's Enterprises*, 397 Ill. App. 3d 581, 595 (Ill. App. Ct. 1st Dist. 2009) (applying FLSA approval standards to Illinois wage claims). As part of the FLSA, claims arising under the EPA similarly require judicial approval. *Oesterle-Kleine v. Horizon Bank*, No. 3:20-CV-1047-HAB, 2022 WL 3226914 at *1 (N.D. Ind Aug. 9, 2022). "Normally, a settlement is approved where it is the result of 'contentious arm's-length negotiations, which were undertaken in good faith by counsel ... and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation.'" *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 995 (N.D. Ind. 2010) (internal citations

omitted).

An EPA settlement should be approved when the settlement reflects a "fair and reasonable resolution of a *bona fide* dispute..." *Lynn's Food Stores, Inc.*, 679 F.2d at 1355; *see also Winking v. Smithfield Fresh Meats Corp.*, No. 1:22-cv-01937, 2022 WL 16706898 at *1 (N.D. Ill. Nov. 4, 2022) (Kocoras, J.). It is the court's role to ensure that the settlement "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Oesterle-Kleine*, 2022 WL 3226914, at *1 *quoting Burkholder*, 750 F.Supp.2d at 995. In determining whether the resolution is fair and reasonable, courts may consider the following factors: (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceeding and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of the defendants to withstand a larger judgment; (6) the range of reasonableness of the settlement fund in light of the best possible recovery; and (7) the range of reasonableness of the settlement fund in light of all the risks of litigation. *Paredes v. Monsanto Co.*, No. 4:15-CV-088 JD, 2016 WL 1555649, at *2 (N.D. Ind. Apr. 18, 2016). Where the settlement agreement provides for an award of attorneys' fees, the court also examines whether that amount is reasonable. *See Small v. Richard Wolf Med. Instruments Corp*., 264 F.3d 702, 707 (7th Cir. 2001).

## III. THE PARTIES REACHED A RESONABLE COMPROMISE OF A *BONA FIDE* DISPUTE.

This settlement was the result of contentious, arms-length negotiations. In fact, the settlement was only accomplished with extensive assistance from Judge McShain before, during, and after the settlement conference. Throughout this litigation, the parties have fervently disputed liability, the existence and amount of any alleged damages, and Plaintiff's ability to certify or maintain class or collective allegations in this case. In particular, Plaintiffs allege that they were

paid less than their male counterparts because they received a lower base rate of pay, *i.e.* their salaries were lower. Plaintiffs argue that Defendants violated the EPA by paying them lower salaries than the male managers (and managing partners) regardless of how much they made in total after factoring in their bonus compensation. *See, e.g., Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643 (4th Cir. 2021) (holding that EPA prohibits unequal wage rates); *Kelly v. Media Gen., Inc.*, No. CV 03-AR-2557-S, 2005 WL 8158684 (N.D. Ala. July 20, 2005) (same). Defendants, however, vigorously disagreed with Plaintiffs' claims, asserting among other things, that Plaintiffs failed to identify proper comparators and that Plaintiff's claims improperly disregarded their total compensation packages. *See, e.g., Weinand v. Dep't of Veterans Affs. of the State of Ill.*, No. 05-3232, 2006 WL 1319809, at *3 (C.D. Ill. May 15, 2006) (citing 29 C.F.R. § 1620.10); *Marting v. Crawford & Co.*, 203 F. Supp. 2d 958 (N.D. Ill. 2002) (granting summary judgment for defendant and finding that plaintiff could not sustain EPA claim where her total wages exceeded those of her male comparators); *Gallagher v. Kleinwort Benson Gov't Sec., Inc.*, 698 F. Supp. 1401, 1404 (N.D. Ill. 1988) (same). Additionally, Defendants argued that – to the extent any pay negative disparity existed – it was solely due to factors other than sex, including among other things the different bonus structures applicable at various restaurant locations, the location and profitability of the restaurants, and the skills, experience, and growth potential of the specific employee. *See e.g., Lauderdale v. Illinois Dep't of Hum. Servs.*, 876 F.3d 904, 907 (7th Cir. 2017); *Warren v. Solo Cup Co.*, 516 F.3d 627, 631 (7th Cir. 2008) (consideration of different educational backgrounds, experiences, and qualifications is a factor other than sex).

In pursuit of their claims and defenses, the parties conducted substantial discovery, including completion of oral and written fact discovery. Through the thorough discovery conducted, the parties were able to use information obtained to make informed, specific

assessments of their respective cases, along with the value of the claims, and the risks of proceeding with their cases through summary judgment and/or trial. Indeed, all parties have used such information to acknowledge that they would all incur substantial expenses and face risks if they proceed with litigation, including further class, merits, and expert discovery, sending notice, the second-step of 216(b) collective certification, decertification motion practice, dispositive motions, and trial. In sum, each side has been able to make informed decisions and determine the appropriate compromise to resolve the case in lieu of proceeding with the further time, expense, inconvenience, risk, and uncertainty of further litigation. *See Paredes*, 2016 WL 1555649, at *2 (approving settlement where parties acquired enough information to acknowledge risks and substantial expense with continued litigation and "hedg[ed] against those risks by agreeing to a settlement"). Therefore, the settlement is an informed resolution, with the parties having obtained information establishing that the issues in the case are complex, the risks Plaintiffs face in trying to prove liability, damages, and collective issues are significant, and the cost of further litigation would be substantial for both sides.

The settlement amount is reasonable in light of Plaintiffs' potential for recovery and risks of litigation. Each Plaintiff will receive a substantial recovery:

- Tracey O'Neil will receive a settlement payment in the gross total amount of $23,333.34;
- Stacy Ott Carroll will receive a settlement payment in the gross total amount of $9,280.39; and
- Bianca Viamontes will receive a settlement payment in the gross total amount of $12,286.15.

<u>See</u> <u>Ex. A</u>.

Based upon Plaintiffs' calculations of their alleged damages, Plaintiff assert that through this settlement each Plaintiff will receive 80% of what they allege their unpaid wages to be. *See Paredes*, 2016 WL 1555649, at *2 (finding settlement amount reasonable despite being *less* than total recoverable damages). Again, the parties dispute all elements and aspects of Plaintiffs' claims, including whether joint employment may be established, whether Plaintiffs identify proper comparators, and whether they may establish any wage disparity at all.. Given the myriad factual and legal disputes, Plaintiffs believe it is a reasonable compromise to recover the majority of what they allege to be their unpaid wages. *See Ceniceros v. Pactiv, LLC*, No. 18-CV-1759, 2019 WL 13252838, at *1 (N.D. Ill. Jan. 17, 2019) (Mason, J.).

Plaintiffs recognize that they still would face significant hurdles and risks in seeking to establish liability and damages in this case. Although the parties disagree on the merits of their respective positions, they each understand that the legal questions and the facts are in dispute and that settlement is favorable. *See Paredes*, 2016 WL 1555649, at *2 (recognizing that settlement may be favored where parties have disputes on questions of law and fact relating to liability and damages). Moreover, settlement is favored because the range of potential recovery is relatively broad as the outcome will depend on how the court will decide certain threshold legal issues. Thus, the settlement amount agreed upon between Plaintiffs and Defendants reflects a compromise by all parties after a "reasoned and counseled decision." *Id*.

## IV. PLAINTIFF'S COUNSEL SEEK A COMPROMISED AMOUNT IN ATTORNEY'S FEES

The FLSA, 29 U.S.C. § 216(b), provides that the court "shall . . . allow a reasonable attorney's fee to be paid by the defendant [to a prevailing plaintiff], and the costs of the action." Reasonable attorneys' fees and costs may properly be awarded as part of a negotiated settlement of disputed claims. *See, e.g.*, *Winking*, 2022 WL 16706898, at *3; *Castillo v. Noodles & Co.*, No.

16-CV-03036, 2016 WL 7451626, at *4 (N.D. Ill. Dec. 23, 2016). Because the law was specifically designed to encourage attorneys to accept wage cases, even though the amount in dispute may be relatively small, the Seventh Circuit has "repeatedly rejected the notion that the fees must be calculated proportionally to damages." *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009).

Here, Plaintiffs' attorneys' fees and costs are fair and reasonable given the specific circumstances of this case. As described above, each Plaintiff will receive the lion's share of what she alleges her damages to be. Additionally, the attorneys' fee figure included in the Agreement is significantly reduced from Plaintiff's actual attorneys' fee lodestar. Thus far, the parties have engaged in extensive discovery, including multiple rounds of written discovery and depositions, extensive complex calculations to assess potential liability and damages, and motion practice. As a result, Plaintiff has incurred $5,913.25 in expenses and $124,453.75 in attorneys' fees as of the date of this Motion. See Ex. B ¶¶ 11, 12. The Agreement provides for reimbursement of $5,913.25 in expenses and $48,909.95 in fees. See Ex. A. Although disproportionate, this fee award accounts for less than 50% of actual fees incurred. *See Dominguez*, 897 F.Supp.2d at 687 (citing *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 592 (7th Cir. 2000)) ("The purpose of a fee shifting statute, which is to enable smaller claims to be litigated, would be thwarted if attorneys' fees had to be strictly proportional to the amount recovered."). Plaintiff O'Neil participated in the settlement conference and at all times was expressly informed of the amounts sought for reimbursement of expenses and an award of fees. By electing to opt-in to this action, Plaintiffs Carroll and Viamontes specifically agreed to grant Plaintiffs' Counsel the authority to represent them in this Lawsuit, as well as acknowledged within the authorization form that they would be bound by any settlement, ruling, or judgment, favorable or unfavorable. This written authority

specifically included the right of Plaintiffs' Counsel to negotiate a fair resolution or settlement of all wage and hour claims that were brought in the Lawsuit or which could have been brought in the Lawsuit. Additionally, Plaintiffs Carroll and Viamontes specifically reviewed, approved, and accepted the settlement, including the specific amounts designated as attorneys' fees and costs. See Ex. A. Here, Plaintiffs' Counsel obtained Defendants' agreement to pay an amount that Plaintiffs' counsel determined, and Plaintiffs agreed, would be the best potential positive outcome for the Plaintiffs. In such a scenario, the EPA mandates approval of an award of Plaintiffs' reasonable attorneys' fees and reimbursement of costs. 29 U.S.C. § 216(b).

## V. CONCLUSION

As discussed above, the parties have agreed to settlement of all claims in this dispute and the general releases set out in their Settlement Agreement. While Defendants do not admit and steadfastly reject any liability or wrongdoing, all parties agree that the settlement terms they have reached in this action represent a fair and equitable resolution of this matter.

WHEREFORE, Plaintiff Tracey O'Neil and Defendants Bloomin' Brands Inc; OS Restaurant Services, LLC; and Outback Steakhouse of Florida LLC respectfully request this Honorable Court grant their Joint Motion for Approval and enter an order dismissing this action in its entirety and with prejudice.

Dated: April 8, 2024

Respectfully submitted,

TRACEY O'NEIL, individually and on behalf of all others similarly situated

By: /s/ Alexis D. Martin
Alexis D. Martin, #6309619
Amanda Burns, #6332506
Caffarelli & Associates, Ltd.

BLOOMIN' BRANDS, INC.; OS RESTAURANT SERVICES, LLC; and OUTBACK STEAKHOUSE OF FLORIDA, LLC,

By: /s/ Margot Klein (with permission)
Margot Klein
Jennifer L. Colvin

224 S. Michigan Ave., Suite 300
Chicago, Illinois 60604
Tel. (312) 763-6880
*amartin@caffarelli.com*
*aburns@caffarelli.com*

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
155 N. Wacker Dr., Suite 4300
Chicago, IL 60606
Tel. (312) 558-3022
*margot.klein@ogletree.com*
*jennifer.colvin@ogletree.com*


**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on April 8, 2024, the foregoing *Joint Motion for Approval of Settlement* was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Alexis D. Martin
One of Plaintiff's Attorneys